DEBORAH M. SMITH
Acting United States Attorney

DAVID A. NESBETT
Special Assistant U.S. Attorney
Federal Building & U.S. Courthouse
222 West Seventh Avenue, Room 253, #9
Anchorage, Alaska  99513-7567
Phone: (907) 271-5071
Fax: (907) 271-1500
Email: david.nesbett@usdoj.gov

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. 3:06-cr-0043-JWS |
| | ) | |
| Plaintiff, | ) | **UNITED STATES'** |
| | ) | **OBJECTIONS TO** |
| vs. | ) | **RECOMMENDATION** |
| | ) | **REGARDING MOTION TO** |
| SEAN TURVIN and CORINA | ) | **SUPPRESS EVIDENCE** |
| CUNNINGHAM, | ) | |
| | ) | |
| Defendants. | ) | |

COMES NOW the United States of America, by and through counsel, and

respectfully submits its objections to the Magistrate Judge's Recommendation

Regarding Defendant's Motion to Suppress Evidence.[1]

I.   Introduction

---

[1] Due to the nature and complexities of the issues presented, the government requests that the court accept this overlength brief.

Defendant Sean Turvin filed a motion to suppress evidence as a result of the search of his vehicle.[2] The motion was joined by defendant Cunningham.[3] The government filed an opposition to the defendant's motion to suppress.[4] The court issued its Recommendation Regarding Defendant's Motion to Suppress, which recommended that the defendant's motion be granted and evidence should be suppressed.[5]

Respectfully, the government objects to the court's recommendation. First, subsequent discovery of an error in the interpretation of evidence as presented during the evidentiary hearing actually establishes that Trooper Christensen did in fact possess reasonable suspicion to extend the detention to include a request for consent to search defendant's vehicle. Second, the government disagrees with the court's determination that the facts in this case are indistinguishable from United States v. Chavez-Valenzuela, 268 F.3d 719 (9th Cir. 2001). Finally, the government contends that the defendant's consent was in fact voluntary pursuant to the factors set forth in United States v. Castillo, 866 F.2d 1071, 1082 (9th Cir. 1989). The government objects, therefore, to the court's recommendation to

---

[2]   Clerk's Doc. No. 23

[3]   Clerk's Doc. No. 26

[4]   Clerk's Doc. No. 30

[5]   Clerk's Doc. No. 50

suppress the evidence and instead requests that the court deny the defendant's motion.

II.   Argument

    A.   Trooper Christensen Possessed Reasonable Suspicion To Extend Detention

The testimony elicited from Trooper Christensen during the evidentiary hearing indicated that he had observed and questioned Turvin about the speaker box in the back seat only after he had asked for consent to search the vehicle. Indeed, the government conceded as much and the court clearly relied on this testimony in its recommendation. Factually, this is an error. In fact, Trooper Christensen questioned Turvin about the speaker box *prior* to requesting his consent to search the vehicle.

A careful review of the taped conversation between Trooper Christensen and Turvin reveals the actual and correct sequence of events.[6] First, Trooper Christensen informed Turvin that he knew he Turvin had been involved in a prior incident with a "rolling meth lab" in the back of his truck. Turvin then acknowledged this was true. Trooper Christensen then said, "Ok, I also see, behind your seat, it looks like something is behind your seat."[7] Turvin then

---

    [6]    See Government's Ex. No. 1; CD Previously Submitted at Evidentiary Hearing.

    [7]    Exhibit 1, Track 1, 0:32

replied, "It's a speaker box."[8]  Finally, Trooper Christensen asked, "Ok, do you have a problem with me searching your vehicle, it looks kinda odd, it looks very odd?"[9]  Turvin replied affirmatively and then the trooper again asked, "so you would allow us to search your vehicle?"[10]  Turvin again consented to the search of his vehicle.

It is clear from the audio recording that Trooper Christensen mentioned the prior contact, then observed the speaker box, and only then requested consent to search Turvin's vehicle.  It is also clear that Trooper Christensen was making a connection between the past illegal conduct of Turvin and the possibility of present illegal conduct when he observed the speaker box in the back seat and stated, "it looks kinda odd, it looks very odd."[11]  Trooper Christiansen knew that a mobile meth lab could be located in a container the size of an empty speaker box.  Trooper Christensen was therefore justified in further detaining and searching Turvin's vehicle because the trooper had "reasonable suspicion supported by specific articulable fact of criminal activity" that Turvin was currently in possession of a possible "rolling meth lab."  See Terry v. Ohio, 392 U.S. 1, 30 (1968).  So long as

---

[8]     Exhibit 1, Track 1, 0:38.

[9]     Exhibit 1, Track 1, 0:40.

[10]    Exhibit 1, Track 1, 0:48.

[11]    Exhibit 1, Track 1, 0:40.

the consent to search the vehicle was voluntarily given by Turvin, the evidence obtained subsequent to the search does not violate the Fourth Amendment rights of the defendants and the Motion to Suppress should be denied.

    B.    <u>The Duration of the Traffic Stop Was Reasonable and Not Improperly Extended</u>

A traffic stop may become unlawful if it is prolonged beyond the time reasonably required to complete the mission. <u>Illinois v. Caballes</u>, 543 U.S. 405, 407 (2005). In concluding that the stop did not unlawfully infringe on the constitutional interests of the defendant, the court reviewed the details of the officer's conversation with the defendant and the precise timing of the radio transmissions to the dispatcher to determine whether the officer had improperly extended the duration of the stop to enable the dog sniff to occur. <u>Id.</u> at 408. The Supreme Court held that the duration of the stop was entirely justified by the traffic offense and the ordinary inquiries incident to such a stop. <u>Id.</u>

Here, the radio dispatch revealed that the time of the stop was 1947 hours. Trooper Christensen approached the vehicle, received verbal identification, and then went back to his patrol car to issue the citation. Trooper Christensen returned to issue the citation at 2001 hours. It took less than a minute or two for the trooper to ask Turvin about his prior "rolling meth lab," observe the speaker box in the back seat, and then ask for permission to search his vehicle. Based on the dispatch

record, Trooper Christensen did not improperly extend the duration of the stop to enable the search of the vehicle because he had not even completed writing the traffic citations at the time the consent was provided by Turvin. The short duration of the stop was entirely justified by the traffic offense and the ordinary inquires incident to such a stop.

In Chavez-Valenzuela, 268 F.3d at 728, the driver of the vehicle was subjected to "probing questions" as the officers was waiting the results of the records check. The officers asked the driver about his travel plans and occupation after the driver exhibited extreme shaking and avoided eye contact with the officers. Id. at 724. The court of appeals ruled that the nervousness alone did not justify extending the detention and questioning of the driver about matter not related to the stop. Id.

Unlike the prolonged detention at issue in Chavez-Valenzuela, the instant matter is distinguishable because there was not an extended detention at all. Trooper Christensen did not "probe" for answers to various questions about travel plans or occupation as the officers did in Chavez-Valenzuela. Id. at 728. Trooper Christensen asked Turvin only to acknowledge his prior involvement with a "rolling meth lab" in the same white Chevy pickup truck while the trooper was still writing the traffic citations. Therefore, in the event that the court does not find that

Trooper Christiansen had reasonable suspicion, there is no violation of the Fourth Amendment and this matter is distinguishable from Chavez-Valenzuela.

    C.    Turvin's Consent to Search the Vehicle Was Voluntary

Trooper Christensen was justified in asking Turvin for consent to search his vehicle. Once an officer has issued a citation, he or she must allow the driver to continue without additional delay or questioning unless "during the course of the traffic stop the officer acquires an objectively reasonable and articulable suspicion that the driver is engaged in illegal activity *or* the driver voluntarily consents to the officer's additional questioning." United States v. White, 2006 WL 1360165 (10th Cir. May 17, 2006) p. 6, quoting United States v. Sandoval, 29 F.3d 537, 542 (10th Circ. 1994).

First, as discussed above, Trooper Christensen observed a speaker box in the backseat of the car and he was aware of Turvin's prior incident with a "rolling meth lab." The trooper, therefore, had an objectively reasonable and articulable suspicion that the driver was engaged in illegal activity.

In addition, Turvin voluntarily consented to Trooper Christensen's questions and subsequent search of the vehicle. An individual may waive his Fourth Amendment rights by giving voluntary and intelligent consent to a warrantless search of his person, property, or premises. United States v. Torres-Sanchez, 83

F.3d 1123, 1129 (9th Cir. 1996). The validity of a person's consent is a question of fact, and its resolution depends upon the totality of the circumstances. <u>Castillo</u>, 866 F.2d at 1082; <u>see</u> <u>also</u> <u>United States v. Morning</u>, 64 F.3d 531, 533 (9th Cir. 1995) (internal citation omitted). The court considers the following five factors in determining whether a person has freely consented to a search: (1) whether defendant was in custody; (2) whether the arresting officers had their weapons drawn; (3) whether <u>Miranda</u> warnings were given; (4) whether the defendant was told he had the right not to consent; and (5) whether the defendant was told that a search warrant could be obtained. <u>Id;</u> <u>see</u> <u>also</u> <u>United States v. Morning</u>, 64 F.3d 531, 533 (9th Cir. 1995).

 Here, the defendant was not in custody or seized at the time he provided consent. The exchange between the troopers and Turvin was relaxed, non-confrontational, and low-key. Second, the trooper's guns were not drawn; the basis for the stop was a mere traffic violation. Third, <u>Miranda</u> warnings were not given because he was not in custody. Fourth, the first question posed to Turvin was whether he had a prior incident with a "rolling meth lab." The trooper then asked about the speaker box behind his seat and whether he would have a problem consenting to the search of his vehicle. Turvin immediately answered in the affirmative. The troopers never explained to him that he had the right not to

consent. And fifth, Turvin was not told that a search warrant could be obtained. The application of the fifth factor depends on the particular circumstances of the case and hinges on whether a suspect is informed about the possibility of a search warrant in a threatening manner. See United States v. Cormier, 220 F.3d 1103, 1112 (9th Cir. 2000). In this case, the trooper's failure to inform Turvin that he could obtain a search warrant supports the view that Turvin freely and voluntarily consented to the search of his vehicle.

Ultimately, there is nothing to suggest that the troopers exerted any overt or implicit coercion over Turvin. Trooper Christensen indicated that the driver and owner of the vehicle "verbally" identified himself as Sean Turvin. Trooper Christensen never was in possession or control of Turvin's driver's license and, thus, never held on to it during the contact.

Moreover, in Ohio v. Robinette, 519 U.S. 33, 40 (1996), the Supreme Court held that a lawfully seized defendant does not have to be advised that he is "free to go" before his consent to search will be recognized as voluntary. Similar to Robinette, Trooper Christensen was not constitutionally required to advise Turvin he was "free to go."

Under the totality of the circumstances, Turvin's consent to search his vehicle was voluntary and, thus, was valid and the subsequent search of the vehicle was not

a violation of the Fourth Amendment.

    D.    <u>Cunningham Does Not Have Standing</u>

Cunningham does not have standing to object to the suppression of evidence. In <u>United States v. Twilley</u>, 222 F.3d 1092, 1095 (9th Cir. 2000), the court held that a passenger with no possessory interest in the car "has no reasonable expectation of privacy in a car that would permit [a] Fourth Amendment challenge to a search of the car." A passenger with no possessory interest in a vehicle cannot object to a continued detention or suppress the fruits of that detention, because "Fourth Amendment rights are personal rights which . . . may not be vicariously asserted." <u>United States v. Pulliam</u>, 405 F.3d 782 (9th Cir. 2005). Here, Cunningham was the passenger of the car driven by Turvin. Cunningham has no possessory interest in the car and she has no reasonable expectation of privacy that would permit her Fourth Amendment challenge to a search of the car.

E.    <u>Conclusion</u>

Based on the foregoing, the temporary detention and subsequent search of the vehicle did not violate the Fourth Amendment. The evidence, therefore, should not

be suppressed.

RESPECTFULLY SUBMITTED this 7th day of July, 2006, at Anchorage, Alaska.

DEBORAH M. SMITH
Acting United States Attorney

s/ David A. Nesbett
Special Assistant U.S. Attorney
Federal Building & U.S. Courthouse
222 West Seventh Avenue, Rm 253
Anchorage, Alaska  99513-7567
Phone: (907) 271-6306
Fax: (907) 271-1500
E-mail: david.nesbett@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on July 7, 2006,
a copy of the foregoing  was served
electronically on Michael Dieni
& Lance Wells.

s/ David A. Nesbett
Special Assistant U.S. Attorney