**FOR PUBLICATION**

RECEIVED

**UNITED STATES COURT OF APPEALS**
**FOR THE NINTH CIRCUIT**

CLERK, U.S. DISTRICT COURT
ANCHORAGE, A.K.

UNITED STATES OF AMERICA,
              *Plaintiff-Appellant,*

              v.

SEAN T. TURVIN; CORINA L.
CUNNINGHAM,
              *Defendants-Appellees.*

No. 06-30551

D.C. No.
CR-06-00043-a-
JWS/JD

OPINION

Appeal from the United States District Court
for the District of Alaska
John W. Sedwick, District Judge, Presiding

Argued and Submitted
August 8, 2007—Anchorage, Alaska

Filed February 26, 2008

Before: J. Clifford Wallace, John T. Noonan, and
Richard A. Paez, Circuit Judges.

Opinion by Judge Wallace;
Dissent by Judge Paez

## SUMMARY

### Criminal Law and Procedure/Search and Seizure

The court of appeals reversed a judgment of the district court. The court held that brief pauses to ask questions during traffic stops, even if those questions are unrelated to the purpose of the stop, may be permissible under the Fourth Amendment.

Appellees Sean Turvin and Corina Cunningham were charged in district court in Alaska with methamphetamine possession and distribution crimes after police discovered drugs in Turvin's truck during a traffic stop initiated by Alaska State Trooper Christensen. About 10 minutes after the stop began, while Christensen sat in his vehicle writing out traffic citations, Trooper Powell arrived at the scene and told Christensen that he recognized Turvin's name because he knew that a "rolling meth lab" had been found in Turvin's vehicle after an earlier traffic stop. Christensen stopped writing the tickets, approached Turvin's truck, and mentioned the prior traffic stop, which Turvin acknowledged. Christensen saw an "odd" speaker box in Turvin's truck and asked Turvin if he could search the truck. Turvin consented to the search. Turvin and Cunningham moved to suppress, arguing that the police had no reasonable suspicion for the prolonged detention, and that Turvin's consent to the search of his truck was involuntary. The district court granted the motion, finding that Christensen exceeded the scope of the traffic stop by pausing his ticket-writing process and investigating into suspected drug activities beyond the scope of the traffic stop. Relying on the Ninth Circuit's decision in *United States v. Chavez-Valenzuela*, the court reasoned that Turvin's consent did not render the search lawful because it was obtained during an extended and an unlawful detention arising from a traffic stop. The court denied the government's motion for reconsideration. After the district court's final ruling, the Ninth Circuit decided *United States v. Mendez*, 476 F.3d 1077 (9th Cir. 2007).

The government appealed.

[1] In *Mendez*, the court of appeals rejected a Fourth Amendment claim despite the fact that police officers in that case had, without reasonable suspicion, asked Mendez questions unrelated to the purpose of an initially lawful traffic stop, acknowledging that the Supreme Court had overruled those portions of *Chavez-Valenzuela* that required police offi-

cers to have reasonable suspicion to ask questions beyond the scope of a traffic stop. **[2]** Mere police questioning does not constitute a seizure and thus no reasonable suspicion is required to justify questioning that does not prolong an initially lawful stop. **[3]** At the time *Chavez-Valenzuela* was decided, any questioning unrelated to the purpose of the stop, regardless of its effect on the duration of the stop, needed to be supported by reasonable suspicion. That underlying assumption is no longer good law. *Mendez* is the law on police questioning during a traffic stop.

**[4]** The Ninth Circuit had never considered whether questioning unrelated to the purpose of the traffic stop and separate from the ticket-writing process that prolongs the duration of the stop may nonetheless be reasonable under the Fourth Amendment. **[5]** Considering the totality of the circumstances surrounding the stop, its total duration up to the point at which Turvin consented to the search was about 14 minutes, which is no longer than an ordinary traffic stop could reasonably take. Of that time, it took Christensen perhaps four minutes to speak with Powell and then to walk to Turvin's vehicle and ask him about the rolling meth lab and for consent to search. This was reasonable for him to do based on Powell's arrival and information. **[6]** That Christensen observed the speaker box prior to requesting consent to search buttressed the conclusion that his request was reasonable under the circumstances. Christensen knew of the prior rolling meth lab, which could have been contained in something like the speaker box, justifying further inquiry. Christensen's question and request to search were reasonable based on facts learned and observations made after he stopped Turvin.

**[7]** Other circuits have adopted the same analysis: brief pauses to ask questions during traffic stops, even if those questions are unrelated to the purpose of the stop, may be permissible. **[8]** It had to be held that *Mendez*'s conclusion that officers do not need reasonable suspicion to ask questions unrelated to the purpose of an initially lawful stop applied

here because Christensen's question and request for consent to search did not unreasonably prolong the duration of the stop. **[9]** As the stop was at all times a lawful detention, Turvin's voluntary consent rendered Christensen's search legal. Therefore, the evidence obtained as a result of that search was admissible and the district court's order to suppress had to be reversed.

Judge Paez dissented, writing that *Mendez* clearly held that questioning that extends the duration of a stop must be supported by reasonable suspicion, and that holding was consistent with the part of *Chavez-Valenzuela* that remains good law —the majority's approach was at odds with these holdings.

## COUNSEL

Nelson P. Cohen, United States Attorney, and David A. Nesbett, Assistant United States Attorney, District of Alaska, and Elizabeth A. Olson, Attorney, U.S. Department of Justice, Washington, D.C., for the appellant.

Mary C. Geddes, Assistant Federal Defender, Anchorage, Alaska, for the appellees.

## OPINION

WALLACE, Senior Circuit Judge:

The government appeals from the district court's order suppressing evidence obtained from the search of Turvin's vehicle. While Turvin was waiting for a police officer to issue a traffic citation, the officer questioned Turvin about methamphetamine and obtained Turvin's consent to search his vehicle for contraband. The district court held that the officer's questions about methamphetamine and request to conduct a

search, unsupported by reasonable suspicion, turned an initially reasonable detention into an unconstitutional one and rendered Turvin's consent involuntary. We have jurisdiction pursuant to 18 U.S.C. § 3731 and we reverse.

## I.

On the evening of November 20, 2005, Alaska State Trooper Christensen stopped a white pickup truck based on the truck's unusually loud exhaust, rapid acceleration around a turn involving minor skidding, and driving six miles over the speed limit in snowy conditions. When he approached the truck, which had entered a gas station parking lot, the Trooper observed that neither occupant appeared to be wearing a seatbelt and that the truck's registration was expired. He asked the occupants for identification; the driver was Sean T. Turvin and the occupant was Corina L. Cunningham. The Trooper talked to them for three or four minutes about the violations he had observed and then returned to his police vehicle, where he radioed headquarters to conduct a warrant and license check. The response informed him that Turvin's driver's license was current and valid.

About ten minutes after the stop began, while Christensen sat in his vehicle writing out traffic citations, Trooper Powell arrived at the scene. Powell had heard Christensen on the police radio and recognized Turvin's name because he knew that a "rolling methamphetamine laboratory" had been found in Turvin's vehicle following a traffic stop earlier that year.

When Powell arrived, he recognized Turvin and Turvin's truck, and informed Christensen about the prior incident. Christensen then stopped writing out the traffic citations, turned on his tape recorder, and stepped out to speak with Turvin, who was still in his truck. Powell positioned himself at the rear of Turvin's truck to assist if needed.

Upon approaching the truck, Christensen told Turvin that he knew about the rolling methamphetamine laboratory,

which Turvin acknowledged. Christensen then observed
something in plain view behind Turvin's seat, which Turvin
identified as a speaker box. Christensen then asked Turvin if
he would mind if Christensen searched his vehicle because
the speaker box, Christensen said, "look[ed] very odd." The
conversation was calm and relaxed, and Turvin consented to
the search without equivocation.

The search ultimately yielded a sawed-off shotgun 1 inches
below the minimum legal length and a small cup containing
packages of a crystal substance determined by field test to be
methamphetamine. Turvin was placed in custody when the
methamphetamine packages were discovered.

Turvin and Cunningham were cited for not wearing seat-
belts, and Turvin was cited for his truck's loud exhaust. Cun-
ningham was arrested based on her proximity to the drugs
found in the cup. A search of Cunningham revealed $773 in
cash. Later, when police examined the cash at the police sta-
tion, they found mixed in among the bills a plastic bag con-
taining a substance suspected to be methamphetamine.

Turvin and Cunningham were indicted for conspiracy to
traffic methamphetamine and possession with intent to dis-
tribute five grams or more of methamphetamine. Turvin was
also indicted for possession of a prohibited firearm. Turvin
filed a motion to suppress, which Cunningham joined, arguing
that "the police had no reasonable suspicion for the prolonged
detention," and that Turvin's consent to the search of his truck
was involuntary.

The district court granted Turvin's motion to suppress,
adopting the magistrate judge's (MJ) recommendation that,
though the initial traffic stop was lawful and based on proba-
ble cause that a traffic violation had occurred, Christensen
"exceeded the scope of the traffic stop" by "investigat[ing]
into suspected drug activities beyond the scope of the traffic
stop during the time that Turvin was not free to leave." The

MJ and district judge agreed that this investigation violated
Turvin's Fourth Amendment rights as explained by us in
*United States v. Chavez-Valenzuela*, 268 F.3d 719 (9th Cir.
2001). Turvin's consent to the search, the MJ reasoned, did
not render the search lawful because it was obtained during
"an extended and an unlawful detention arising from a traffic
stop." The district judge denied the government's motion for
reconsideration and the government timely appealed.

## II.

We review for clear error the district court's underlying
findings of fact and *de novo* the district court's ruling on a
motion to suppress. *United States v. Miranda-Guerena*, 445
F.3d 1233, 1236 (9th Cir. 2006). The only disputed issue on
appeal is whether Christensen violated Turvin's and Cunning-
ham's Fourth Amendment rights by asking questions unre-
lated to the purpose of the stop that unreasonably extended the
duration of the initially lawful traffic stop.

## A.

[1] Our analysis of the district court decision is based pri-
marily on our recent and on-point decision in *United States v.
Mendez*, 476 F.3d 1077 (9th Cir. 2007), which we decided
after the district court's final ruling. In *Mendez*, we rejected
a Fourth Amendment claim despite the fact that police offi-
cers in that case had, without reasonable suspicion, asked
Mendez questions unrelated to the purpose of an initially law-
ful traffic stop. *Id.* at 1081. In so deciding, we acknowledged
that the Supreme Court had overruled those portions of
*Chavez-Valenzuela* (the case upon which the district court's
decision was based) that required police officers to have rea-
sonable suspicion to ask questions beyond the scope of a traf-
fic stop. *Id.* at 1080.

In *Mendez*, Detectives Jaensson and Bracke had stopped
Mendez because his car did not have a license plate or tempo-

rary registration tag. *Id.* at 1078. While Bracke conducted a records check in the patrol car, Jaensson waited at the curb with Mendez and asked him several questions unrelated to his license plate or vehicle registration. *Id.* at 1078-79. Once Bracke completed the records check, he started back toward the curb to inform Mendez that his temporary registration plate had expired; en route, he overheard Mendez telling Jaensson that he was "trying to get away from the gang life" and that he had spent time in an Illinois prison. *Id.* at 1079. As he approached the curb, Bracke asked Mendez why he had been imprisoned; Mendez replied that he had been convicted of a weapons violation. *Id.* Bracke then asked whether Mendez had any weapons in the car and Mendez eventually admitted to having a firearm in the driver's door handle. *Id.* The officers arrested Mendez and searched the vehicle, finding a loaded, small caliber, semi-automatic pistol. *Id.* Mendez moved to suppress the handgun, but the district court denied his motion. *Id.*

[2] Mendez pled guilty but preserved the right to appeal from the district court's denial of his motion, arguing that the officers lacked reasonable suspicion to interrogate him about matters beyond the purpose of the stop and that the officers unreasonably prolonged the stop. *Id.* We rejected Mendez's arguments, relying on the Supreme Court's decision in *Muehler v. Mena*, 544 U.S. 93 (2005), which held that "mere police questioning does not constitute a seizure" and thus no reasonable suspicion is required to justify questioning that does not prolong an initially lawful stop. *Mendez*, 476 F.3d at 1080, *quoting Muehler*, 544 U.S. at 101 (internal quotation marks omitted). We concluded that "the officers' questioning of Mendez did not extend the duration of a lawful stop" and so "the expanded questioning need not have been supported by separate reasonable suspicion." *Id.* at 1081.

The *Mendez* and *Muehler* reasoning is persuasive in this appeal, and we reject Turvin's and the dissent's reliance on *Chavez-Valenzuela*; contrary to the dissent's assertion, none

of the aspects of *Chavez-Valenzuela* that are relevant to this appeal survive *Muehler*.

[3] We disagree with the dissent's characterization of the primary holding in *Chavez-Valenzuela*. The dissent asserts the primary holding was "that an officer cannot ask questions that extend the duration of a traffic stop beyond its initial purpose without having reasonable suspicion for doing so." Diss. Op. at 1634. The dissent errs as the issue before this court in *Chavez-Valenzuela* was whether nervousness alone provided the reasonable suspicion required (at the time) to justify an officer's continued detention of a suspect after he had satisfied the purpose of the stop. 268 F.3d at 726. The question of whether reasonable suspicion was necessary to justify questioning that prolonged the duration of the stop was simply not relevant (and certainly not addressed) in *Chavez-Valenzuela*, because at the time it was decided *any* questioning unrelated to the purpose of the stop, regardless of its effect on the duration of the stop, needed to be supported by reasonable suspicion. *See id.* at 724. That underlying assumption is no longer good law. *See Mendez*, 476 F.3d at 1080 ("To the extent that *Chavez-Valenzuela* . . . hold[s] that such questioning must be supported by reasonable suspicion, [it has] been overruled by *Muehler*.") *Mendez* is the law on police questioning during a traffic stop, and it is *Mendez* that we must apply to the facts of this case.

## B.

However, we must now address a factual distinction between this case and *Mendez* that has not yet been resolved by our post-*Muehler* cases. As we pointed out in *Mendez*, "the stop was not unnecessarily prolonged." *Id.* at 1079. Jaensson's questioning occurred while Bracke was checking on Mendez's identification, so "the stop would, in any event, have lasted until after the check had been completed." *Id.* at 1080. Once the records check was complete, Bracke, who had overheard Mendez's comments about gang membership and

jail time, "immediately asked his two questions." *Id.* We also pointed out that from the time of the stop up to the arrest was only eight minutes. *Id.*

Turvin contends that in this case, the stop *was* unnecessarily prolonged. The MJ did not specifically address this point, determining that the questions were unconstitutional merely because they were outside the scope of the stop, a conclusion now clearly foreclosed by *Mendez*. After a motion for reconsideration, however, the MJ did state in his final report that "the traffic stop . . . was extended or prolonged because of the comments by late arriving Trooper Powell . . . . Although Trooper Christ[e]nsen had been writing traffic tickets . . . he stopped his ticket-issuing process and used a tape recorder solely for the purpose of asking Turvin about drugs and for [ ] consent to search his vehicle."

The question, then, is this: does the fact that Christensen paused his ticket-writing process to ask a few questions unrelated to the purpose of the traffic stop, thereby prolonging, for at least a few moments, the duration of that otherwise legal stop, turn the initially lawful stop into an unlawful detention? That is, based on the factual circumstances underlying this appeal, did Christensen's brief pause unreasonably prolong the traffic stop and thus violate Turvin's Fourth Amendment right to be free from an unreasonable seizure?

[4] We have never considered whether questioning unrelated to the purpose of the traffic stop and separate from the ticket-writing process that prolongs the duration of the stop may nonetheless be reasonable under *Muehler*'s Fourth Amendment analysis. Nor have other circuits squarely addressed this factual situation. However, the Supreme Court's teaching that "the touchstone of the Fourth Amendment is reasonableness," *Florida v. Jimeno*, 500 U.S. 248, 250 (1991), gives us important guidance. The Court has emphasized that a fact-specific reasonableness inquiry is appropriate for Fourth Amendment questions. *See Ohio v.*

*Robinette*, 519 U.S. 33, 39 (1996). Therefore, in the present case, we must examine the "totality of the circumstances" surrounding the stop, and determine whether Christensen's conduct was reasonable. *Id.*

In *Mendez*, we identified the overall length of the stop, observing that the eight-minute stop was not beyond the time normally required to issue a citation. 476 F.3d at 1079-80. We also pointed out that Jaensson and Bracke did not intentionally delay the stop but diligently pursued their investigation into the purpose of the stop. *Id.* at 1080.

**[5]** As in *Mendez*, the circumstances surrounding the brief pause here were reasonable. The total duration of the stop up to the point at which Turvin consented to the search was, according to Christensen's uncontested testimony, about fourteen minutes. This is no longer than an ordinary traffic stop could reasonably take, and we do not agree with the dissent that evidentiary findings are necessary to demonstrate the sensible observation that fourteen minutes is not unreasonably long for a traffic stop. Of that time, it took Christensen perhaps four minutes to speak with Powell and then to walk to Turvin's vehicle and ask him about the rolling methamphetamine laboratory and for consent to search. This was reasonable for him to do based on Powell's arrival and information about a rolling methamphetamine laboratory involving the same vehicle and the same person.

**[6]** Moreover, that Christensen observed the speaker box prior to requesting consent to search buttresses the conclusion that his request was reasonable under the circumstances. Christensen knew of a prior rolling methamphetamine laboratory, which could have been contained in something like the speaker box, justifying further inquiry. The speaker box observation is significant. The MJ's initial findings of fact indicated that Christensen did not see the box behind Turvin's seat until after he sought consent to search. We agree with the government that this finding is clearly erroneous; the audio

recordings of the stop show that Christensen did observe the
box before requesting consent to search. This fact is relevant
in establishing the circumstances in which Christensen asked
for consent to search. Just as it was reasonable in *Mendez* for
officers to ask questions based on information learned during
the course of the stop, Christensen's question and request to
search were reasonable based on facts learned and observa-
tions made after he stopped Turvin.

[7] Sister circuits have adopted the same analysis: brief
pauses to ask questions during traffic stops, even if those
questions are unrelated to the purpose of the stop, may be per-
missible under *Muehler*. The Tenth Circuit held that question-
ing that does not "appreciably" extend the duration of a traffic
stop is reasonable, *see United States v. Stewart*, 473 F.3d
1265, 1269 (10th Cir. 2007), *United States v. Alcaraz-
Arellano*, 441 F.3d 1252, 1259 (10th Cir. 2006). The Tenth
Circuit has declined to "make a time and motion study of traf-
fic stops" in order to determine the precise effect that ques-
tioning has on the duration of a stop, reasoning instead that
courts must "consider the detention as a whole." *United States
v. Patterson*, 472 F.3d 767, 776 (10th Cir. 2006).

The Eighth Circuit has similarly held that a traffic stop
based on probable cause for driving at an excessive speed was
not made unreasonable when an officer "ask[ed] three brief
questions related to possible drug trafficking amidst his other
traffic related inquiries and tasks." *United States v. Olivera-
Mendez*, 484 F.3d 505, 511 (8th Cir. 2007). (We do not pass
upon that court's adoption of a *de minimis* exception justify-
ing brief questions.)

Indeed, officers are not required to move at top speed when
executing a lawful traffic stop. As the Eleventh Circuit has
stated,

> A traffic stop for speeding can doubtlessly last long
> enough for the police to ask questions about the rea-

sons for speeding and to conduct a variety of checks
about licenses, registration, insurance and so on. We
underline that the police are not constitutionally
required to move at top speed or as fast as possible.
For the police to be vigilant about crimes is, at least
broadly speaking, a good thing. And at a traffic stop,
the police can occasionally pause for a moment to
take a breath, to think about what they have seen and
heard, and to ask a question or so. The police are
authorized to detain traffic violators for a *reasonable*
amount of time.

*United States v. Hernandez*, 418 F.3d 1206, 1212 n.7 (11th
Cir. 2005) (internal citation omitted); *see also United States
v. Sharpe*, 470 U.S. 675, 686 (1985) (holding that a detention
was not unreasonable where officers, though slowed down,
were diligent in their investigation).

This analysis applies with particular force where, like here,
officers have probable cause to know of a traffic violation.
The Seventh Circuit, in a pre-*Muehler* decision, persuasively
reasoned that where probable cause of a traffic violation sup-
ports a stop, a driver does not

ha[ve] a right to be released the instant the steps to
check license, registration, and outstanding warrants,
and to write a ticket, ha[ve] been completed. It is
therefore not necessary to determine whether the
officers' conduct added a minute or so to the mini-
mum time in which these steps could have been
accomplished. . . . What the Constitution requires is
that the entire process remain reasonable. Questions
that hold potential for detecting crime, yet create lit-
tle or no inconvenience, do not turn reasonable
detention into unreasonable detention.

*United States v. Childs*, 277 F.3d 947, 953-54 (7th Cir. 2002)
(en banc). We agree with this reasoning and result.

Christensen's brief pause in the ticket-writing process was reasonable, as was the duration of the detention until consent was given. We will not accept a bright-line rule that questions are unreasonable if the officer pauses in the ticket-writing process in order to ask them. The Supreme Court has "consistently eschewed bright-line rules [in the Fourth Amendment context], instead emphasizing the fact-specific nature of the reasonableness inquiry." *Robinette*, 519 U.S. at 39. It is true that in *Mendez*, the officers managed to ticket and question detained drivers simultaneously. *See Mendez*, 476 F.3d at 1078-79. That has been true in situations considered by other circuits as well. *See, e.g., United States v. Soriano-Jarquin*, 492 F.3d 495, 501 (4th Cir. 2007) ("In this case, [the Trooper's] request for identification did not prolong the stop, as it occurred while the police trainee checked the driver's license and registration and prepared his citations"). It does not follow, however, that those are the *only* circumstances in which it is reasonable to ask unrelated questions. The Supreme Court does not set such a narrow rule, and neither do we. An officer who asks questions while physically writing a ticket will likely be slowed down just as an officer who briefly pauses to do so. There is no principled reason why the second situation is unconstitutional but not the first.

The present case illustrates the irrationality of the distinction Turvin and the dissent offer. Under their proposed bright-line rule, Christensen's questions may have been permissible in a number of scenarios materially indistinguishable from what happened here: if Christensen had asked about drugs when he originally stopped Turvin, or as he was handing the ticket to Turvin, or if Christensen had asked Powell to continue writing the ticket while he approached Turvin, or if Powell had asked the questions while Christensen wrote the ticket. Permitting those scenarios but not the reasonable actions that Christensen chose to take would draw an arbitrary and unjustified line between constitutional and unconstitutional conduct. Rather than bright-line simplification, the Constitution requires a reasonableness analysis.

### III.

[8] We hold that *Mendez*'s conclusion that officers do not need reasonable suspicion to ask questions unrelated to the purpose of an initially lawful stop applies here because Christensen's question and request for consent to search did not unreasonably prolong the duration of the stop. Because we decide on this basis, we do not reach the issue of whether reasonable suspicion supported Christensen's questioning.

[9] As the stop was at all times a lawful detention, Turvin's voluntary consent rendered Christensen's search legal. *See United States v. Torres-Sanchez*, 83 F.3d 1123, 1129 (9th Cir. 1996). Therefore, the evidence obtained as a result of that search is admissible and the district court's order to suppress is REVERSED.

---

PAEZ, Circuit Judge, dissenting:

Because I do not believe that reasonable suspicion supported Trooper Christensen's decision to prolong his traffic stop of Turvin, I would affirm the district court's order granting Turvin's motion to suppress. I therefore respectfully dissent.

First, I agree with the majority that after the Supreme Court's decision in *Muehler v. Mena*, 544 U.S. 93 (2005), our analysis of the Fourth Amendment issues in this case must be guided by our recent decision in *United States v. Mendez*, 476 F.3d 1077 (9th Cir. 2007). There, we recognized that in *Muehler*, the Court decided that "mere police questioning does not constitute a seizure unless it prolongs the detention of the individual, and, thus, no reasonable suspicion is required to justify questioning that does not prolong the stop." *Mendez*, 476 F.3d at 1080 (internal quotation marks omitted). Although *Muehler* did not arise in the context of a traffic stop,

we further recognized that the Court's reasoning applied to such an encounter. *Id.*

In several cases prior to *Muehler*, we had held that during the course of a traffic stop "[a]n officer must initially restrict the questions he asks . . . to those that are reasonably related to the justification for the stop." *United States v. Chavez-Valenzuela*, 268 F.3d 719, 724 (9th Cir. 2001) (citing *United States v. Perez*, 37 F.3d 510, 513 (9th Cir. 1994)). *See also United States v. Murillo*, 255 F.3d 1169, 1174 (9th Cir. 2001). We had emphasized that an officer could expand the scope of questioning "only if he notices particularized, objective factors arousing his suspicion." *Chavez-Valenzuela*, 268 F.3d at 724 (citation omitted). After *Muehler*, this line of reasoning could not pass constitutional muster, and we so held in *Mendez*. We therefore concluded that: "[t]o the extent that *Chavez-Valenzuela*, *Murillo*, and *Perez* hold that such questioning must be supported by separate reasonable suspicion, they have been overruled by *Muehler*." *Mendez*, 476 F.3d at 1080. Recognizing this new legal landscape, we rejected Mendez's Fourth Amendment challenge to his arrest, explaining that, "because . . . the officers' questioning did not prolong the stop, we are compelled to hold that the expanded questioning need not have been supported by separate reasonable suspicion." *Id.* at 1080-81.

Here, to the extent that the district court's suppression ruling relied on the portion of *Chavez-Valenzuela* that was overruled by *Mendez*, it was incorrect. As the majority recognizes, however, this was not the only basis for the district court's ruling. In the magistrate judge's Final Recommendation Regarding Defendant's Motion to Suppress, he explained:

> [As the [Initial] Recommendation concluded the traffic stop of Turvin and his passenger Cunningham was extended or prolonged because of the comments by late arriving Trooper Powell who advised Trooper Christiansen [sic] of a prior police contact

with Turvin involving a rolling meth lab. Although
Trooper Christiansen [sic] had been writing traffic
tickets to Turvin and Christiansen [sic] (for not
wearing a seat belt), he stopped his ticket-issuing
process and used a tape recorder solely for the pur-
pose of asking Turvin about drugs and for a consent
to search his vehicle. Normally, an officer engaged
in a traffic stop will not use a tape recorder. Tr. 25.
The magistrate judge reaffirms his finding that the
police prolonged the otherwise lawful detention of
Turvin and his passenger on grounds for which they
did not have reasonable suspicion for doing so.

I agree with the district court that reasonable suspicion did
not exist to prolong the stop of Turvin and his companion. It
is clear from Trooper Christensen's testimony that until
Trooper Powell arrived on the scene, Christensen did not have
any reason to suspect that either Turvin or his companion had
been or were engaged in any illegal drug activity.

Christensen had stopped Turvin's truck because of its loud
exhaust, rapid acceleration around a corner, minor skidding
and speeding. As Christensen approached the truck, he
observed that neither occupant appeared to be wearing a seat-
belt and the truck's registration was expired. After Christen-
sen conducted a license and warrants check on Turvin, he was
informed that Turvin's license was current and valid. Trooper
Christensen then decided to issue traffic citations to Turvin
and his companion.

About ten minutes after the stop began, while Christensen
sat in his vehicle writing out the traffic citations, Trooper
Powell arrived at the scene. Powell had heard Christensen on
the police radio and recognized Turvin's name, because he
knew that a "rolling meth lab" had been found in Turvin's
vehicle following a traffic stop earlier in 2005.

When Powell arrived at the scene, he recognized Turvin
and his truck and informed Christensen about the prior inci-

dent. Christensen then (1) "stopped his ticket-issuing pro-
cess," (2) turned on the tape recorder in his police vehicle
"solely for the purpose of asking Turvin about drugs and for
a consent to search his vehicle," and (3) exited his vehicle and
returned to Turvin's truck, while Powell positioned himself at
the rear of Turvin's vehicle to stand by as backup. At this
point, the troopers had not seen anything in the truck to indi-
cate that it might contain methamphetamine or that Turvin
and his companion were involved with meth.

After returning to the truck, Christensen told Turvin, who
was standing outside his vehicle, that he knew about the roll-
ing meth lab, which Turvin acknowledged. After stating that
he could see something behind Turvin's seat, which Turvin
said was a speaker box, Christensen asked Turvin if he could
search his vehicle. The purpose of seeking Turvin's consent
was to search for contraband.

Although the majority faults the magistrate judge for erro-
neously finding that Christensen asked for consent to search
before observing the speaker box, I agree with his determina-
tion that whether this observation occurred before or after
Christensen asked for consent, is immaterial. What is impor-
tant in my view is that, when Powell informed Christensen
about his prior encounter with Turvin earlier in 2005, Chris-
tensen did not just "briefly pause" in writing the traffic cita-
tions so that he could ask Turvin for consent to search his
truck. Rather, Christensen completely stopped writing the
citations and decided to embark upon a drug investigation.
Indeed, he turned on his tape recorder for the purpose of ask-
ing Turvin about drugs and for consent to search his vehicle.
Because, as the magistrate judge correctly found, this new
endeavor prolonged the length of the stop, Christensen needed
reasonable suspicion to do so.

Here, reasonable suspicion did not exist. Reasonable suspi-
cion requires a "particularized and objective basis for suspect-
ing the person stopped of criminal activity." *United States v.*

*Tiong*, 224 F.3d 1136, 1140 (9th Cir. 2000) (internal quota-
tion marks omitted). There was nothing about the traffic
infractions or Turvin's conduct after the stop that provided an
objective basis for a reasonable officer to suspect that illegal
drug activity was afoot. Moreover, Christensen did not imme-
diately see anything in the truck that aroused his suspicion. It
was not until Powell arrived at the scene with information
about his prior contact with Turvin that Christensen even con-
sidered inquiring about illegal drug activity. This new infor-
mation that centered on Turvin's prior criminal record, by
itself, was insufficient to support reasonable suspicion. *Bur-
rell v. McIlroy*, 464 F.3d 853, 858 n.3 (9th Cir. 2006)
("Although a prior criminal history cannot alone establish rea-
sonable suspicion or probable cause to support a detention or
an arrest, it is permissible to consider such a fact as part of the
total calculus of information in these determinations."). *See
also United States v. Chamberlin*, 644 F.2d 1262, 1265 (9th
Cir. 1980); *United States v. Santos*, 403 F.3d 1120, 1132
(10th Cir. 2005).

The majority finds it significant that Christensen did not
ask for consent until after he observed the speaker box behind
Turvin's seat. The majority's emphasis on this observation,
however, minimizes Christensen's response to the informa-
tion provided by Powell. It seems obvious, that, with this new
information, Christensen had a hunch that if he were to search
the truck he might well find drugs, drug paraphernalia, or
even a "rolling meth lab." A hunch, while it might reflect
good police intuition, does not amount to reasonable suspi-
cion. *See United States v. Thomas*, 211 F.3d 1186, 1191 (9th
Cir. 2000) ("Reasonable suspicion must be based on more
than an officer's 'inchoate and unparticularized suspicion or
'hunch.' '" (quoting *Terry v. Ohio*, 392 U.S. 1, 27 (1968)));
*Chavez-Valenzuela*, 268 F.3d at 724 ("Conversely, an incho-
ate and unparticularized suspicion or 'hunch' cannot with-
stand scrutiny under the Fourth Amendment." (quoting *United
States v. Sokolow*, 490 U.S. 1, 7 (1989))).

In sum, I agree with the district court's determination that
reasonable suspicion did not exist to prolong the traffic stop.
The majority does not directly address this issue. Maj. Opin.
at 1629. ("[W]e do not reach the issue of whether reasonable
suspicion supported Christensen's questioning."). Instead, the
majority, while invoking a fact-specific Fourth Amendment
reasonableness inquiry, concludes that "we must examine the
"totality of the circumstances" surrounding the stop, and
determine whether Christensen's conduct was reasonable."
Maj. Opin. at 1625. Ultimately, the majority holds that
"*Mendez*'s conclusion that officers do not need reasonable
suspicion to ask questions unrelated to the purpose of an ini-
tially lawful stop applies here because Christensen's question
and request for consent to search did not unreasonably pro-
long the duration of the stop." Maj. Opin. at 1629. In the con-
text of this case, this approach can not be sanctioned by
*Mendez*, or *Chavez-Valenzuela*, or by the district court's find-
ings.

As I read *Mendez* (and *Muehler*), when a police officer asks
questions that exceed the purposes of a traffic stop, such ques-
tioning "does not constitute a seizure unless it *prolongs the
detention of the individual*." *Mendez*, 476 F.3d at 1080
(emphasis added) (internal quotation marks omitted). When
the expanded questioning prolongs the duration of an initially
lawful stop, however, such questioning must be supported by
reasonable suspicion. *Id.* Although *Mendez* overruled portions
of *Chavez-Valenzuela*, *id.* at 1080, it left intact its primary
holding—that an officer cannot ask questions that extend the
duration of a traffic stop beyond its initial purpose without
having reasonable suspicion for doing so. *Chavez-Valenzuela*,
268 F.3d at 725-26. Thus, as I have discussed, the critical
question here is whether reasonable suspicion existed for the
extended stop, and not whether the extended duration was rea-
sonable under all the circumstances.

In support of its holding, the majority points to the informa-
tion provided by Powell about his prior contact with Turvin,

characterizes the interruption in the ticket writing as brief, emphasizes Christensen's observation of the speaker box behind Turvin's seat, and finds that the duration of the stop to the point at which Turvin consented to the search—approximately fourteen minutes—"is no longer than an ordinary traffic stop could reasonably take." Maj. Opin. at 1625. There is nothing in the record to support the latter finding. The Government did not present any evidence on this issue, and the district court did not make such a finding. This is a factual determination that is best left to the district court. In any event, because the majority adopts an approach that is inconsistent with *Mendez* and *Chavez-Valenzuela*, I am not persuaded by its assessment of Trooper Christensen's conduct.

With the majority's approach, it will take very little for traffic officers to invoke T.V. Detective Columbo's infamous strategy of asking "just one more question." *See United States v. Chavez-Valenzuela*, 281 F.3d 897, 897-98 n.1 (9th Cir. 2002) (O'Scannlain, J., dissenting from denial of rehearing en banc). So long as there is some basis to briefly prolong a stop, even when the purpose of the stop has ended, there will be no Fourth Amendment violation. Although it does not take much to satisfy the reasonable suspicion standard—particularized objective facts that criminal activity is afoot—the majority's new approach lowers Fourth Amendment protection another notch.

The majority's discussion of cases from several of our sister circuits is not persuasive. In *United States v. Stewart*, 473 F.3d 1265 (10th Cir. 2007), the county sheriff's expanded questioning occurred while the motorist was in the process of retrieving his driver's license, and, as the defendant conceded, the questions did not appreciably prolong the stop. In *United States v. Alcaraz-Arellano*, 441 F.3d 1252, 1256-58 (10th Cir. 2006), the expanded questioning occurred while the officer was gathering and verifying information provided by the driver of the vehicle. Notably, when the officer returned the

license to the driver, and then began to ask additional ques-
tions, the court determined that the officer prolonged the stop,
which could only be justified if the officer had reasonable sus-
picion. *Id.* at 1259-60. After considering all of the information
that the officer had acquired during the course of the stop, the
court held that the officer had reasonable suspicion to further
detain the driver. *Id.*

In *United States v. Patterson*, 472 F.3d 767, 777 (10th Cir.
2006), Patterson alleged that the trooper prolonged the deten-
tion while obtaining his documents and conversing with him
as the trooper waited for verification of Patterson's license
and vehicle registration. He argued that the trooper deliber-
ately extended the time necessary to complete the stop so that
another trooper could arrive with a drug detection dog to
inspect Patterson's vehicle, which took place approximately
ten minutes into the stop. *Id.* at 773, 777. In evaluating the
reasonableness of the stop from the initial detention to the
issuance of the traffic ticket, the court held that the trooper did
not unreasonably prolong the stop and relied upon the fact
that Patterson did the majority of the talking. *Id.* at 777. As
the trooper finished writing a warning ticket, a drug detection
dog alerted to a scent on the vehicle. *Id.* at 773. After the dog
alerted several more times, the trooper searched the vehicle
and found illegal drugs in a hidden compartment. *Id.* The dog
alert provided reasonable suspicion for the troopers to prolong
their detention of Patterson from the alert to the arrest. *Id.* at
776.

In *Patterson*, the court disagreed with the defendant's argu-
ment that the trooper prolonged the stop by taking too long to
complete those actions necessary to issue a traffic ticket; the
court further held that the shift in focus to a drug investigation
did prolong the stop but was supported by reasonable suspi-
cion. *Id.* at 777-78. Here, Christensen did not extend the
detention of Turvin while he obtained information from Tur-
vin immediately after the stop or while he waited for the war-
rants check and verification of Turvin's license. Nor do the

facts suggest that Turvin was overly talkative. Only after Powell arrived on the scene, did Christensen stop writing the traffic citations and refocus the stop into a drug investigation, thus prolonging it. He did so without reasonable suspicion.

Without much explanation or analysis, the majority is persuaded by and adopts the Seventh Circuit's approach in *United States v. Childs*, 277 F.3d 947 (7th Cir. 2002) (en banc). There, the court held "that where a seizure of a person is based on probable cause to believe that a traffic violation was committed, an officer does not violate the Fourth Amendment by asking a few questions about matters unrelated to the traffic violation, even if this conversation briefly extends the length of the detention." *United States v. Olivera-Mendez*, 484 F.3d 505, 510 (8th Cir. 2007). Several other circuits, the Eighth in *Olivera-Mendez, id.* at 511, and the Sixth in *United States v. Burton*, 334 F.3d 514, 518-19 (6th Cir. 2003), have also adopted the Seventh Circuit's reasoning in *Childs*.

In our circuit, however, the majority does not write on a clean slate. As I read *Chavez-Valenzuela* and *Mendez*, when an officer prolongs a traffic stop with expansive questioning, the extended duration must be supported by reasonable suspicion. Although we concluded that probable cause existed to stop Chavez-Valenzuela for speeding, we proceeded to examine whether the extended detention was supported by reasonable suspicion. *Chavez-Valenzuela*, 268 F.3d at 725-727. In *Mendez*, the validity of the initial stop was not disputed. Nonetheless, we clearly held that questioning that extends the duration of a stop must be supported by reasonable suspicion. *See Mendez*, 476 F.3d at 1080. That holding is consistent with the part of *Chavez-Valenzuela* that remains good law. In my view, the majority's approach to this important Fourth Amendment issue is at odds with *Chavez-Valenzuela* and with our bottom line holding in *Mendez*.

For all the above reasons, I would affirm the district court's suppression ruling. I therefore respectfully dissent.

PRINTED FOR
ADMINISTRATIVE OFFICE—U.S. COURTS
BY THOMSON/WEST—SAN FRANCISCO

The summary, which does not constitute a part of the opinion of the court, is copyrighted
© 2008 Thomson/West.